## T. G. COOPER & CO., Inc. v. BRICE.

United States District Court,
S. D. New York.

June 20, 1949.

See also D.C., 8 F.R.D. 633.

John L. Seymour, New Rochelle, attorney for plaintiff.

I. Arnold Himber, New York City, attorney for defendant.

RYAN, District Judge.

### Findings of Fact.

1. The plaintiff, T. G. Cooper & Co., Inc., hereinafter called Cooper or plaintiff, is a corporation of Pennsylvania, a dealer in wax products and the like, including natural vegetable waxes such as Carnauba and Candelilla, and a maker of synthetic wax or wax substitutes such as Akusaka, a Japan wax substitute.

2. The defendant, Lucien Brice, formerly Lucien Bloch, hereinafter designated as Brice or defendant, is a naturalized citizen of the United States, a resident of New York, New York, and a chemist having knowledge of the use of vegetable waxes and vegetable wax substitutes, who is possessed of secret and original processes and formulae for the manufacture of wax products such as shoe, floor, and

automobile polish, carbon paper, insulating compositions, and the like.

3. There is diversity of citizenship and the amount in controversy is more than $3,000 exclusive of interests and costs.

4. On January 12, 1942, Cooper and Brice entered into a Contract, Exhibit A, by the terms of which Cooper was granted the sole exclusive right, within the United States of America, of the use of Brice's original process for the improvement and refinement of vegetable waxes for the replacement of Carnauba wax, and for other purposes.

5. Under the contract, the plaintiff furnished the defendant with funds for the purchase of secret materials called Intermediates, and with raw waxes to be mingled with the Intermediates, and defendant purchased the Intermediates, mingled them with the waxes, and shipped the products back to the plaintiff, who mixed them with more wax. The final products are substitutes for Carnauba wax and are called Corumbus, in the trade.

6. The Intermediates were secret and known only to defendant.

7. The essences of the processes were secret and known only to the defendant.

8. The plaintiff had an exclusive right to use the processes and to sell the products in this country.

9. The defendant retained the right to use the processes in countries other than the United States.

10. Defendant received from plaintiff the cost of the Intermediates, certain expenses, and 6% royalty on the amount of net proceeds from sales of the products produced through the use of the process.

11. The business proceeded on this basis until 1943, when plaintiff's plant burned down and an oral modification of the written agreement was made by the parties to provide for the continuance of the business, under which the defendant, who had already established a plant of his own at 266 Williams Street, New York, New York, undertook to manufacture the wax substitutes according to his said secret processes, and plaintiff paid him, in addition to the 6% provided for by said Exhibit A, the rental for his factory and an operating charge per pound of product produced.

12. The Contract, Exhibit A, as thus orally modified, was continued in force until January 12, 1948, when it was superseded by Agreement Exhibit B, and Trust Agreement Exhibit C.

13. The oral modification of Contract Exhibit A did not include any modification of plaintiff's exclusive right to the use of the process in the United States, and did not permit the defendant to use the secret process in the United States except for Cooper, or to sell the said wax substitutes in the United States.

14. On occasion, Brice suggested to Cooper possible foreign ventures in sales of Corumbu waxes and several such transactions were successfully completed, Cooper furnishing the money for Intermediates, raw materials, and sharing in the profits, and on other occasions, Brice proposed foreign ventures which Cooper rejected as unattractive but gave Brice oral permission to proceed with on his own account.

15. Brice used his said processes to make, in the United States, Carnauba wax substitutes which he sold to Concord Export-Import Corporation of New York, New York, for export for about $93,000. The name given by Brice to the said substitute, made for and sold to Concord, was Ceriod, but the product was substantially identical with and for the same purpose as one of the Corumbus, viz, for use in carbon paper.

16. The business prospered and Brice received about $75,000 in royalties between 1942 and the end of 1947, in addition to the rental of his plant and operating charges on material made for Cooper.

17. In 1946, Cooper had on hand, or had purchased in Brazil for delivery, about 100,000 pounds of Carnauba wax to be used in making the Brice substitutes. At the same time, the market became weak. They discussed the matter with Brice who stated that he could dispose of the Carnauba in foreign countries to better advantage than it could be disposed of on the American market. Brice stated that he

could undertake to dispose of the Carnauba wax for the benefit of the business, and that he would complete the transactions in the Carnauba surplus without profit to himself. Brice' showed plaintiff documents concerning a proposed sale in Canada, plaintiff shipped Carnauba to Brice to fill the order, and later Brice reported that he had completed this Canadian transaction and collected the money, and he paid Cooper for that lot of wax.

18. Thereafter, Brice alleged negotiations in England and France and several lots were shipped by plaintiff to defendant, allegedly disposed of by him to his foreign customers, the money collected and Cooper was paid.

19. The defendant represented to plaintiff that he knew a French purchaser who had funds currently deposited and readily available in the United States, and that such funds could be used for the purchase of plaintiff's Carnauba wax and that payment would be made in 10 days after delivery and shipping documents were presented. Each of the shipments in the 77,-000 pounds listed in Exhibit C was made by plaintiff in reliance upon said representations by defendant.

20. Between February 4, 1947 and April 25, 1947, the plaintiff shipped, on various dates which are set forth, both as to dates and quantities in paragraph First of Exhibit C, a total quantity of 77,000 pounds, defendant received the said wax, and at the time of the delivery thereof, the wax had an agreed value of $101,348.72. Each of the said transactions occurred in substantially the same way, the defendant calling the plaintiff by 'phone from New York, and repeated the aforesaid statements and stating that his French purchaser offered a stated price per pound for a stated amount; the said amounts and prices are listed in Exhibit AA.

21. The said lots were shipped by plaintiff on its ordinary invoices, showing payment due in ten days. The defendant alleged that he had been unable to collect for the shipments of the 77,000 pounds of wax to France, alleged that the delay would be short, and plaintiff made no effort to enforce the ten day provisions of the invoices; that neither party considered the ten day provision of the invoices to be binding as to these shipments.

22. The said statements by the defendant were knowingly false and fraudulent; the defendant knew that these statements were false and fraudulent at the time he made them; the plaintiff believed them to be true and did not know of their fraudulent nature; the plaintiff relied upon the truth of said statements that had been made to them by defendant when obtaining the merchandise from the plaintiff.

23. Plaintiff would not have placed the 77,000 pounds of Carnauba wax in defendant's possession, had the plaintiff not believed in and relied upon the defendant's representations concerning his alleged sales to French customers.

24. The defendant knew at the end of January, 1947, that the American market in Carnauba wax had gone into a definite decline, but nevertheless continued the said false and fraudulent representations concerning the sales to French customers, thus persuaded Cooper to ship the wax to him, and sold the entire quantity of the said 77,000 pounds of Carnauba wax to Concord Export-Import Corporation of New York, frequently selling on the same day to Concord at a lesser price than he was quoting to Cooper to obtain the merchandise.

25. After the 77,000 pounds of Carnauba wax had been so disposed of, and after the 77,000 pounds had been obtained from Cooper and sold to Concord, Brice falsely and fraudulent stated to Cooper that the French purchaser had arranged to buy twenty-five (25) tons of wax in Brazil to replace that obtained from Cooper, although he well knew that there was no French customer and that no such arrangements had been made in Brazil, and the defendant carried the fraud even to the point of giving the name of ships upon which the wax was being shipped out of Brazil, and the port from which the shipments were being made. All such statements were false and fraudulent and de-

fendant knew them all to be false and fraudulent when he made them to the plaintiff.

26. Plaintiff stated to defendant that they did not intend to hold the defendant responsible for losses in the disposal of the 77,000 pounds of Carnauba wax if the losses had occurred in good faith, and demanded that defendant reveal the name of his French purchaser and transfer the documents of title so that plaintiff could pursue the goods to France and obtain redress. The defendant refused to reveal his dealings in the wax, well knowing that his dealings had not been made in good faith.

27. After these sales had been made and the wax had been delivered by the plaintiff to the defendant, the defendant continued and persisted in false and fraudulent representations and statements concerning the sale of the wax and the identity of the person to whom he had sold it; by reason of these facts the defendant perpetrated a fraud upon the plaintiff; the plaintiff was thereby damaged, and sustained damage by reason of the wrongful acts of the defendant in the sum of $101,348.72.

28. In Contract Exhibit B, the defendant acknowledged that he had in his possession, at 266 Williams Street, New York 3,936 pounds of Intermediate A belonging to plaintiff, which was to be used for plaintiff's purposes; acknowledgments by the defendant, and the books of the plaintiff, confirm the existence of this material, its ownership by plaintiff, and its possession by defendant.

29. Demand was made upon Brice by Cooper that he turn over to Cooper all of said Intermediate A, but he failed and refused to turn over a quantity thereof valued at $2,379.75. Defendant did not use it or consume it in the manufacture of the plaintiff's business for products which were subsequently delivered to the plaintiff; defendant has converted that Intermediate A to his own use.

30. As a result of negotiations extending from December 5, 1947 to January 12, 1948, Contract Exhibit B and Trust Agreement Exhibit C were entered into by the parties. The negotiations and the execution of the said Contract B and Trust Agreement Exhibit C was without fraud on the part of the plaintiff and was entered into on the part of the defendant with a full knowledge of the meaning of the said Contract and Trust Agreement. The defendant has exhibited upon the witness stand a knowledge of the English language and a full understanding, at the time of executing the Contract and Trust Agreement, of the significance of all that they contain.

31. In the said negotiations leading up to the execution of Contract Exhibit B and Trust Agreement Exhibit C, Brice represented that he possessed 3,936 pounds of Intermediate A belonging to plaintiff, while well knowing that he did not have them. Before entering into the Contract and Trust Agreement, plaintiff asked about Brice's debts and he represented to plaintiff that the full extent of his liabilities was a $2,000 judgment owed to Concord Export-Import Corporation and an obligation of a few thousand to Seacoast Export Corporation, while well knowing that there were judgments and debts outstanding against him in an amount of over $30,000, and that he had as visible assets only his plant at 266 Williams Street, New York, containing about $3,000 worth of machinery. Brice represented to Cooper that immediately upon the signing of the Contract and Trust Agreement he would reveal to Cooper the secret processes for making the novel products, while fully intending not to make such revelations, or if it became necessary to make a revelation, to make it in fragmentary and incomplete fashion. Brice represented to Cooper that upon the execution of the said Contracts he would transfer to Cooper all obligations and accounts in the proceeds of the 77,000 pounds of Carnauba wax and would give to Cooper all documents, assignments, and transfers necessary to transfer to Cooper legal title to said obligations and accounts so that Cooper might collect the amounts due thereon, while intending, in view of his sales to Concord Export-Import Corporation, never to do so. All of these conceal-

ments and representations were material and constituted frauds by Brice upon Cooper in the making of the Contracts.

32. There is no credible evidence to sustain the counterclaim set up by the defendant which is, in any event, barred by paragraph Second of the Trust Agreement.

33. Plaintiff has also been damaged in the sum of $2,379.75 by reason of the Intermediate A converted.

34. The defendant is required by his Contracts to turn over to Cooper the processes and receipes for making the new products and has not fully complied. Failure to do so contemporaneously with the execution of the Agreement of January 12, 1948, constituted, under paragraph Third of the said Agreement, a breach of the Contract by the defendant as soon as it was made.

35. Plaintiff received an order for Intermediate A, asked Brice for the formula, Brice refused to reveal it although bound by his agreement so to do.

36. Plaintiff did not promise defendant that plaintiff would not enforce Contract Exhibit B and Trust Agreement Exhibit C.

37. The plaintiff has been damaged in the amount of $98,984.22, which is derived as follows:

| | |
|---|---|
| By the Carnauba wax fraud | $101,348.72 |
| By conversion of Intermediate A | · 2,379.75 |
| | 103,728.47 |

The defendant is entitled to credits as follows:

| | |
|---|---|
| Royalty to 1/12/48 | 1,760.01 |
| " " 5/1 /49 | 1,909.90 |
| Intermediate C | 824.74 |
| Intermediate 812 NLP | 249.60 |
| | $ 4,744.25 |

| Subtraction: | $103,728.47 |
|---|---|
| | 4,744.25 |

Amount of this Judgment due to plaintiff from defendant: 98,984.22

With interest from June 21, 1948, and with costs of $460.07.

Conclusions of Law

1. The plaintiff received the sole exclusive right within the United States of America for the use of the defendant's original processes for the improvement and refinement of vegetable waxes and for the replacement of Carnauba wax and other purposes, and Brice was excluded from using his own processes in the United States except for the benefit of Cooper.

2. Plaintiff is entitled to specific performance of section Third of Contract Exhibit B by requiring defendant to disclose to plaintiff in writing the ingredients and production of each and every one of the processes known to Brice pertaining to the improvement and refinement of vegetable waxes and other products for the replacement of Carnauba wax, wax substitutes and other purposes, including the know-how, proportions, catalysts, and their methods of preparation and use, the times and temperatures and all other reaction and process conditions, and equivalents and variants together with the knowledge of the effect thereof, specifically including Intermediate A, Item A, each and every one of the Corumbus, and all other products comprised within the relations of the parties and the terms of the contract; said written disclosure to be furnished to plaintiff within ten days from the date of the decree herein.

3. All royalty and other income which may become due and payable to Brice by reason of the operation of Cooper shall be retained by Cooper and credited to Brice's account in deduction of the amount declared by the judgment herein to be due to Cooper.

4. That, by reason of defendant's fraudulent and wrongful acts, plaintiff has been damaged and is entitled to judgment in its favor in the sum of $98,984.22 with interest from June 21, 1948, together with costs and disbursements of this action in the amount of $460.07. ·

5. The defendant is not entitled to a revision of Agreement Exhibits B and C.

6. The defendant's counterclaim has not been sustained.

7. The plaintiff is entitled to judgment based upon defendant's fraudulent acts.

### Decree

Now therefore, on motion of plaintiff's attorney, it is adjudged, ordered, and decreed:

First: Defendant's demand for reformation of the Agreements Exhibit B and C of January 12, 1948 is denied.

Second: Brice converted 3,936 pounds of Intermediate A belonging to Cooper to his own use; Brice was guilty of fraud in obtaining from Cooper 77,000 pounds of Carnauba wax; Brice was guilty of fraud in the negotiation of the contracts of January 12, 1948.

Third: By reason of defendant's fraudulent and wrongful acts, plaintiff has been damaged and defendant shall pay to plaintiff the sum of $98,984.22 with interest from June 21, 1948, together with costs and disbursements of this action in the amount of $460.07; and plaintiff shall have execution for the sum above decreed to be paid to plaintiff, and for such costs.

Fourth: The plaintiff shall have specific performance of Contract Exhibit B and defendant shall disclose to plaintiff in writing, within 10 days from the date of this decree, the formulas, processes, ingredients, and know-how for each and every one of the processes known to Brice, pertaining to the improvement and refinement of vegetable waxes and other products for the replacement of Carnauba wax, and other purposes, including proportions, catalysts and their methods of preparation and use, times and temperatures and all other reaction and process conditions, and equivalents and variants together with the knowledge of the effect thereof; and the defendant shall within 10 days of any demand made upon him by the plaintiff, give to plaintiff, in writing, such further information as plaintiff shall demand pertaining to said products, processes, and formulas.

Fifth: The counterclaim of the defendant is dismissed.

Sixth: All royalties that may fall due to the defendant under the two Agreements of January 12, 1948, shall be retained by Cooper and credited to defendant in reduction of the amount of this judgment.

Seventh: Defendant shall at all times keep plaintiff informed of his address and places of business and residence, and shall keep the plaintiff informed in advance of any intended change of residence, until the judgment herein is satisfied in full.